Bell, J.
Section 3319.11, Revised Code, with which we are primarily concerned, reads as follows (paragraph-identifying numerals and emphasis added):
“1. Teachers eligible for continuing service status [defined as “employment under a continuing contract” by Section 3319.09, Revised Code] in any school district shall be those *391 teachers, qualified as to certification, who within the last five years have taught for at least three years in the district * * *.
“2. Upon the recommendation of the superintendent that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing service status has.not previously been attained elsewhere, under a limited contract for not to exceed two years, provided that written notice of the intention to make such recommendation has been given to the teacher with reasons therefor on or before the thirtieth day of April, but upon subsequent re-employment only a continuing contract may be entered into.
“3. A limited contract may be entered into by each board with each teacher who has not been in the employ of the board for at least three years and shall be entered into, regardless of length of previous employment, with each teacher employed by the board who holds a provisional or temporary certificate.
“4. Any teacher employed under a limited contract is, at the expiration of such limited contract, deemed re-employed at the same salary plus any increment provided by the salary schedule unless the employing board gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April or 30 days prior to the termination of such teacher’s school year, whichever date occurs the earlier. Such teacher is presumed to have accepted such employment unless he notifies the board in writing to the contrary on or before the first day of June, and a contract for the succeeding school year shall be executed accordingly.”
We find it unnecessary to attempt to resolve the conflict as to whether the respondent board had notice of the relator’s professional certificate prior to April 1956. Since relator claims now only the right to a continuing contract for the school year 1958-59, the fact of his professional certification in time for continuing service status for the school year 1956-57 is immaterial.
Relator became eligible for a continuing contract for the *392 school year 1957-58. At that point the superintendent and the board of education had two alternatives: (1) The superintendent could have recommended that relator be re-employed on a continuing contract and he would have been so re-employed unless the board by a three-fourths vote rejected that recommendation. (2) The superintendent could have recommended re-employment of relator under a limited contract for a “probationary” period not to exceed two years.
The superintendent elected the latter course. Having done so, at the end of such probationary year’s contract, the respondent was foreclosed from entering into any contract with relator other than a continuing one, because the last clause in paragraph two of Section 3319.11, Revised Code, provides that “upon subsequent re-employment only a continuing contract may be entered into.”
However, the very wording of this last clause in paragraph two presupposes an actual re-employment. Relator argues at this point that he is “deemed” to be re-employed by the automatic provisions of paragraph four because no formal action was taken by the respondent board to términate his employment under the limited contract for 1957-58. And he contends that termination of employment requires the same formality as was required to hire him, citing State, ex rel. Rutherford, v. Barberton Board of Education, 148 Ohio St., 242, 74 N. E. (2d), 246.
Relator’s reasoning is in the following steps:
(1) He was hired under a limited contract for the year 1957-58;
(2) Since no formal action was taken by the board to terminate that employment he is deemed to be rehired for the following year;
(3) Since he was eligible for continuing service status at the time of his last limited contract, his subsequent automatic rehiring can only be under a continuing contract.
We have no disagreement with the rule of the Rutherford case, supra, but we fail to see its application to the present situation. The following quotation from the statement of the facts in that case clearly distinguishes it from the present one:
*393 “The relator was employed under a limited contract as a teacher in the Barberton schools for the school year 1945-46, and was not eligible for a continuing contract.”
This argument of relator overlooks one factor, and in our opinion that factor is controlling. Where a teacher has met the prerequisites for continuing service status, the recommendation of the superintendent, under the clear and unequivocal language of the statute, is a prerequisite to re-employment under a continuing contract. Once he has that recommendation he can be kept out of a continuing contract only by a three-fourths vote of the full membership of the board. But without it, he has nothing so far as employment is concerned.
The statutes recite certain qualifications that a person must possess before he can be appointed a school superintendent and, once appointed, the statutes impose great responsibilities on him. Section 3319.01 et seq., Bevised Code. Obviously, the General Assembly intended to repose in the superintendent the responsibility for ascertaining that a person is actually qualified for the tenure insured by a continuing contract before permitting him to have one, rather than to entrust that responsibility to a group of school-board members not necessarily trained to make such responsible decisions.
Much can be said for the argument of relator that the teacher tenure law should be liberally construed in favor of the teacher. The law undoubtedly has been of great benefit to thousands of capable and devoted teachers in providing them a much needed security. It undoubtedly has also resulted in the perpetuation in position of many whose incompetence would have earlier led to summary dismissal and in the stunting of ambition of many who but for the security of tenure in a particular system would have gone on to greater fields of service. One of the safeguards which the General Assembly saw fit to provide against the latter situation is the requirement of a recommendation therefor from his superintendent before a teacher can be given a continuing contract. We consider it a wise safeguard. It is at least a measure of protection given by the General Assembly to those in whose: favor the law should *394 be liberally construed, to those who are the real beneficiaries of the teacher tenure law — the children whom we entrust to the teachers in our public education system.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taet, Matthias, Herbert and Peck, JJ., concur.